UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

S̲t̲e̲v̲e̲n̲ J̲o̲n̲ W̲i̲l̲c̲o̲x̲,

           Plaintiff,                  Case No. 2:20-cv-211

v.                                      Honorable Janet T. Neff

S̲t̲e̲v̲e̲n̲ M̲n̲u̲c̲h̲i̲n̲ et al.,

           Defendants.
_____/

**OPINION**

This is a civil action brought by a state prisoner under 42 U.S.C. § 1983 and the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), 26 U.S.C. § 6824. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint in part because it is moot and in part for failure to state a claim.

**Discussion**

I.  **Factual allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. However, the events about which he complains occurred at the Alger Correctional Facility (LMF) in Alger County, Michigan. In his original complaint (ECF No. 1), Plaintiff sought to bring a class action against United States Secretary of the Treasury Steven Mnuchin, Michigan Atttorney General Dana Knessel, and MDOC Director Heidi Washington. On November 23, 2020, Plaintiff voluntarily dismissed his claims against Defendants Knessel and Washington. Plaintiff filed an amended complaint (ECF No. 11) on December 10, 2020,[1] dropping his class claims and adding as Defendants the following LMF officials: Resident Unit Manager J. Naeyaert, Prison Counselor Jason Hubble, and Correctional Officers John Does ##1 and 2 (Unknown Part(y)(ies)).

The gravamen of Plaintiff's original and amended complaints is a demand for declaratory and injunctive relief against Defendant Mnuchin to establish Plaintiff's general eligibility for advance payments of the income-tax refundable credit created under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), 26 U.S.C. § 6824. Plaintiff seeks a declaration that he and other prisoners are not excluded from CARES Act advance payments solely on the basis of their incarcerated status. He seeks the following injunctive relief from Defendant Mnuchin: (1) a prohibition on denials of advanced payments under the CARES Act solely because

---

[1] Though the amended complaint was not received by this Court until December 16, 2020, Plaintiff signed and dated his amended complaint on December 10, 2020. Under Sixth Circuit precedent, a pleading by an incarcerated person is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). The date on which a prisoner signs his complaint is deemed the date he handed his document to prison authorities for mailing. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006), *Bomer v. Bass*, 76 F. App'x 62, 63 (6th Cir. 2003) (order); *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (order)).

of an individual's incarceration; and (2) a requirement that Mnuchin issue an appropriate notice to all proposed class members of their potential eligibility under the act and the procedure for doing so.[2]

In his amended complaint, Plaintiff adds claims against LMF Defendants Naeyaert, Hubble, and John Does ##1 and 2 arising out of the handling of his transfer from LMF to IBC on December 2, 2020. Plaintiff alleges that, during the transfer Defendants John Does ##1 and 2 allegedly violated prison policy respecting the packing and documenting of his property and violated Plaintiff's right to due process arising out of that policy violation. Plaintiff also complains that John Does ##1 and 2 lost or destroyed a good portion of his personal property, in violation of the Due Process Clause. In addition, he contends that the conduct of Defendants John Does ## 1 and 2, in losing or destroying his property, was taken in retaliation for the many lawsuits and grievances Plaintiff filed against LMF officials between June 2019 and November 2020. Further, Plaintiff argues that Defendants' actions impeded is ability to bring the instant action, in violation of his right to petition government and to access the courts. Plaintiff contends that Defendants Naeyaert and Hubble are responsible for the actions of Defendants John Doe ##1 and 2, because they were the direct supervisors of those Defendants.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

---

[2] Plaintiff's original complaint also sought injunctive relief from Defendants Knessel and Washington, who have since been voluntarily dismissed from the action. The injunctive relief originally requested from Defendants Knessel and Washington included a ban on the MDOC recovering advanced payments from proposed class members under the State Correctional Facility Reimbursement Act (SCFRA), Mich. Comp. Laws §§ 800.401-800.406, together with a requirement that the state Defendants establish a procedure to assist Michigan prisoners to register for advance payments under the CARES Act. Plaintiff, however, has dropped his claims against Defendants Knessel and Washington. Plaintiff's claims for declaratory and injunctive relief from these officials therefore has been abandoned. Plaintiff's amended complaint contains no such request for relief.

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### III. Defendant Mnuchin

Plaintiff seeks declaratory and injunctive relief prohibiting Defendant Mnuchin from denying prisoners advance payments under the CARES Act solely because of their incarcerated status. In *Scholl v. Mnuchin*, No. 20-CV-05309, ___ F.3d ___, 2020 WL 6065059 (N.D. Cal. Oct. 14, 2020) (*Scholl II*), the court summarized the underlying issue that triggered Plaintiff's complaint:

> The CARES Act, codified in part at section 6428 of the Internal Revenue Code, 26 U.S.C. § 6428, establishes a tax credit for eligible individuals in the amount of $1,200 ($2,400 if filing a joint return), plus $500 multiplied by the number of

4

qualifying children. 26 U.S.C. § 6428(a).[] For purposes of the Act, an eligible individual is defined as "any individual" other than (1) any nonresident alien individual, (2) any individual who is allowed as a dependent deduction on another taxpayer's return, and (3) an estate or trust. § 6428(d). The EIP is an advance refund of the subsection (a) tax credit and subsection (f) describes the mechanism for implementing the advance refund. Paragraph (1) of subsection (f) provides that "each individual who was an eligible individual for such individual's first taxable year beginning in 2019[2] shall be treated as having made a payment against the tax imposed by chapter 1 for such taxable year in an amount equal to the advance refund amount for such taxable year." § 6428(f)(1).

Paragraph (3) of subsection (f) requires the IRS to "refund or credit any overpayment attributable to this section as rapidly as possible." § 6428(f)(3). Additionally, Congress provided that "[n]o refund or credit shall be made or allowed under this subsection after December 31, 2020." *Id.* The CARES Act also has a reconciliation provision between the advance refund and the tax credit such that if a taxpayer receives an advance refund of the tax credit then the amount of the credit is reduced by the aggregate amount of the refund. § 6428(e).

Three days after the President signed the CARES Act, the IRS issued a news release explaining that the agency would calculate and automatically issue an EIP to eligible individuals. Declaration of Yaman Salahi ("Salahi Decl."), Dkt. 55, Ex. 1 at 1. Though not required to do so by the Act, the IRS established an online portal for individuals who are not typically required to file federal income tax returns (e.g., because an individual's income is less than $12,200), which allows those non-filers to enter their information to receive an EIP. *Id.*, Ex. 2. Individuals who use the non-filer online portal have until October 15, 2020[3] to register in order to receive the EIP by the December 31, 2020 deadline imposed by the CARES Act. *Id.*, Ex. 3.

On May 6, 2020, the IRS published responses to "Frequently Asked Questions" ("FAQ") on the IRS.gov website. *Id.*, Ex. 4. Question 15 asked "Does someone who is incarcerated qualify for the Payment [i.e., an EIP]?" The IRS responded:

> A15. No. A Payment made to someone who is incarcerated should be returned to the IRS by following the instructions about repayments. A person is incarcerated if he or she is described in one or more of clauses (i) through (v) of Section 202(x)(1)(A) of the Social Security Act (42 U.S.C. § 402 (x)(1)(A)(i) through (v)). For a Payment made with respect to a joint return where only one spouse is incarcerated, you only need to return the portion of the Payment made on account of the incarcerated spouse. This amount will be $1,200 unless adjusted gross income exceeded $150,000.

*Id.* On June 18, 2020, the IRS updated its internal procedures manual to reflect the policy stated in response to the FAQ. *Id.*, Ex. 5.

>On June 30, 2020, the Treasury Inspector General for Tax Administration ("TIGTA") issued a report on the interim results of the 2020 filing season, including results of an audit on the IRS's issuance of the EIPs. *Id.*, Ex. 6. The TIGTA noted that on April 10, 2020 the IRS issued 81.4 million CARES Act payments and some of those payments were sent to incarcerated individuals and deceased individuals. *Id.* at 4.[] At the time, the TIGTA notified IRS management of its concern regarding the issuance of such payments to incarcerated individuals. The report then stated "IRS management noted that payments to these populations of individuals were allowed because the CARES Act does not prohibit them from receiving a payment. However, the IRS subsequently changed its position, noting that individuals who are prisoners or deceased are not entitled to an EIP." *Id.* at 5. The IRS provided taxpayer identification numbers of incarcerated individuals to the Bureau of Fiscal Service[] ("BFS") and requested that BFS remove those individuals from subsequent payments issued on May 1, 2020 and May 8, 2020. *Id.* There were no payments to incarcerated individuals in these later tranches.
>
>TIGTA calculated that the April 10th disbursement sent 84,861 payments totaling approximately $100 million to incarcerated individuals. *Id.* at 6, fig. 3. In response to these already issued payments, the IRS issued guidance, as reflected in the FAQ, that individuals who received a direct deposit payment in error should repay the advance refund by submitting a personal check or money order to the IRS. *Id.* at 6. Individuals who received a paper EIP check were instructed to return the voided check to the IRS. *Id.* Further, plaintiffs cite news stories reporting that the IRS took proactive steps to intercept and retrieve the April 10th payments such as directing state corrections departments to intercept payments made to incarcerated individuals and return them to the IRS. *Id.*, Ex. 7.
>
>[2] The Act permits the IRS to use other information besides a taxpayer's 2019 tax returns including 2018 returns. See § 6428(f)(5).
>
>[3] The IRS later extended this deadline to November 21, 2020 with respect to the online portal, (Dkt. 67 at 6) and this court extended the postmark deadline to October 30, 2020 with respect to mailed paper returns, (Dkt. 69 at 7-8).

*Id.* at *1-2 (footnotes 1, 4, 5 omitted).

Plaintiff contends that Defendant Mnuchin has denied advance credit to all prisoners under the CARES Act solely because of their incarcerated status. He argues that he and others were or will be unable to register for the advance payments because of their incarceration. He contends that enforcement of Defendant Mnuchin's determination must be enjoined.

6

In *Scholl v. Mnuchin*, No. 20-CV-05309, ___ F.3d ___, 2020 WL 5702129 (N.D. Cal. Sept. 24, 2020) (*Scholl I*), the Northern District of California preliminarily certified the following class:

> All United States citizens and legal permanent residents who:
>
> (a) are or were incarcerated (i.e., confined in a jail, prison, or other penal institution or correctional facility pursuant to their conviction of a criminal offense) in the United States, or have been held to have violated a condition of parole or probation imposed under federal or state law, at any time from March 27, 2020 to the present;
>
> (b) filed a tax return in 2018 or 2019, or were exempt from a filing obligation because they earned an income below $12,000 (or $24,400 if filing jointly) in the respective tax year;
>
> (c) were not claimed as a dependent on another person's tax return; and
>
> (d) filed their taxes with a valid Social Security Number, and, if they claimed qualifying children or filed jointly with another person, those individuals also held a valid Social Security Number.
>
> Excluded from the class are estates and trusts; defendants; the officers, directors, or employees of any defendant agency; and, any judicial officer presiding over this action and his/her immediate family and judicial staff.

*Id.* at *25. The class, as defined, includes Plaintiff. The court also granted preliminary injunctive relief in the following form:

> Defendants Steven Mnuchin, in his official capacity as the Secretary of the U.S. Department of Treasury; Charles Rettig, in his official capacity as U.S. Commissioner of Internal Revenue; the U.S. Department of the Treasury; the U.S. Internal Revenue Service; and the United States of America, are hereby enjoined from withholding benefits pursuant to 26 U.S.C. § 6428 from plaintiffs or any class member on the sole basis of their incarcerated status. Within 30 days, defendants shall reconsider advance refund payments to those who are entitled to such payment based on information available in the IRS's records (i.e., 2018 or 2019 tax returns), but from whom benefits have thus far been withheld, intercepted, or returned on the sole basis of their incarcerated status. Within 30 days, defendants shall reconsider any claim filed through the "non-filer" online portal or otherwise that was previously denied solely on the basis of the claimant's incarcerated status. Defendants shall take all necessary steps to effectuate these reconsiderations, including updates to the IRS website and communicating to federal and state correctional facilities. Within 45 days, defendants shall file a declaration

confirming these steps have been implemented, including data regarding the number and amount of benefits that have been disbursed.

*Id.* at *26.

Subsequently, in *Scholl II*, the court granted final certification of the class as previously defined and summary judgment to the plaintiffs. The court entered the following declaratory relief:

> [T]he court finds and declares that title 26 U.S.C. § 6428 does not authorize defendants to withhold advance refunds or credits from class members solely because they are or were incarcerated. The court further finds and declares that defendants' policy that persons who are or were incarcerated at any time in 2020 were ineligible for advance refunds under the Act is both arbitrary and capricious and not in accordance with law.

2020 WL 6065059, at *21. In addition, the court granted the plaintiffs' request to convert the preliminary injunction into a permanent injunction. *Id.*

Thus, to the extent that Plaintiff now seeks declaratory relief prohibiting Defendant Mnuchin from denying prisoners advance payments under the CARES Act solely because of their incarcerated status, that relief has already been granted. Similarly, the court in *Scholl I* and *Scholl II* already granted the preliminary and permanent injunctive relief requested by Plaintiff in this action. As a consequence, Plaintiff's requests for declaratory injunctive relief against Defendant Mnuchin are moot.

For these reasons, Plaintiff's complaint against Defendant Mnuchin will be dismissed as moot.

## IV. Defendants Naeyaert, Hubble, and Defendants John Does ##1 and 2[3]

In his amended complaint, Plaintiff alleges that Defendants John Does ##1 and 2 violated MDOC Policy Directive (PD) 04.07.112(A) by not completing a prisoner Personal

---

[3] The Court notes that Plaintiff's new claims against Defendants Naeyaert, Hubble, and Unknown Part(y)(ies) are wholly unrelated to his original and principal claim against Defendant Mnuchin. Under Rules 18 and 20 of the Federal

8

Property Receipt that itemized Plaintiff's property prior to his transfer to ICF.  Plaintiff alleges that the policy violation deprived him of due process.  Plaintiff also alleges that these unknown Defendants destroyed or misappropriated a substantial amount of his property during the transfer process, in violation of the Due Process Clause.  Further, Plaintiff alleges that Defendants either individually or in conspiracy with one another took these actions in retaliation for the many grievances and lawsuits Plaintiff filed from June 2019 to November 2020.  Plaintiff contends that the taking or destruction of his property by Defendants John Does ##1 and 2 impeded or impaired his ability to pursue the instant litigation, in violation of his right to petition for redress of grievances and to access the courts.  He asserts that Defendants Naeyaert and Hubble are liable for the actions of Defendants John Does ##1 and 2, because they were responsible for supervising them.

  A.  **Naeyaert & Hubble:  Respondeat superior**

Plaintiff fails to make specific factual allegations against Defendants Naeyaert and Hubble, other than that they failed to supervise Defendants Unknown Part(y)(ies), who were under their direct supervision.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene*

---

Rules of Civil Procedure, Plaintiff's claims against these Defendants are misjoined.  *See* 7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) (adopting magistrate judge's report), *and Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).  Rather than dropping the misjoined parties and claims without prejudice, as authorized by Rule 21 of the Federal Rules of Civil Procedure, the Court has elected to review those claims under the dismissal standard of 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c).  Plaintiff, however, is hereby notified that his future complaints should be limited to claims and parties that meet the joinder requirements of Rules 18 and 20.

*v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Naeyaert and Hubble engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

### B.     Defendant John Does ##1 & 2 (Unknown Part(y)(ies))

#### 1.     Violation of prison policy

Plaintiff complains that Defendants John Does ## 1 and 2 violated his rights under MDOC PD 04.07.112(A), when they failed to complete a Personal Property Receipt for the property they packed for Plaintiff's transfer.  He alleges that the failure to follow policy violated his rights under the Due Process Clause.

To the extent that Plaintiff raises a state-law claim, he is not entitled to relief under § 1983.  Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Moreover, to the extent that Plaintiff alleges a violation of due process, his claim also fails.  The elements of a procedural due process claim are:  (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir.

2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992).

Plaintiff's claims based on violations of prison policy therefore fail to state a claim.

### 2. Misappropriation, loss, or destruction of property

Plaintiff next complains that Defendants John Does ##1 and 2 misappropriated, lost, or destroyed a substantial amount of his property without due process of law.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit

authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's claim based on the loss or destruction of his property will be dismissed.

### 3. Retaliation

Plaintiff alleges that the actions of Defendants John Does ##1 and 2 to destroy or misappropriate his property were taken in retaliation for Plaintiff having filed numerous grievances and lawsuits against LMF officials. His sole allegation regarding Defendants' alleged retaliation states as follows:

> Upon information and belief, these acts and omissions were malicious, intentional, and undertaken individually and/or in conspiracy with one or more of the others for the express purpose of punishing, retaliating against and harassing me for the grievances and lawsuits I filed against LMF employees from June 2019 until November 2020 . . . .

12

(Am. Compl., ECF No. 11, PageID.79.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct. He has not alleged any specifics about the alleged grievances and lawsuits. He has neither identified who was the subject of those grievances or lawsuits or when they were filed. Nor has he alleged facts linking his protected conduct to the Defendants in this case. Instead, he merely concludes that because he filed many grievances and lawsuits against LMF officials over a one-and-one-half-year period, Defendants' actions must have been motivated by his protected conduct. Such allegations wholly fail to support Plaintiff's conclusory claim that Defendants retaliated against him because of his grievances and lawsuits. Accordingly, he fails to state a retaliation claim against Defendants John Does ##1 and 2. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 4. Right to access the courts and petition government

Plaintiff alleges that Defendants Unknown Part(y)(ies), by interfering with his legal property, violated his right to access the Court and petition government by "impeding, impairing, preventing or delaying [him] from pursuing litigation in this action." (Am. Compl., ECF No. 11, PageID.79.)

#### a. Access to the courts

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights

14

actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis*, 518 U.S. at 349; *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the

15

underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff's access-to-the-courts claim fails for two reasons. First, his initial complaint in this action does not fall within the types of claims identified by the Supreme Court and the Sixth Circuit. It is not a direct appeal, a habeas corpus action, or a civil rights claim. Instead, it is an action to obtain a prepayment of a tax credit. Such a claim falls outside of the type of case that can produce actual injury.

Moreover, although Plaintiff alleges that the loss of certain materials interfered with or delayed the filing of the instant action, any delay did not cause actual injury. As the Court has discussed Plaintiff's original complaint raised only claims that are moot, given that Plaintiff already has received the declaratory and injunctive relief he sought. Any delay in filing his original action therefore cause him no injury. For both reasons, Plaintiff fails to state an access-to-the-courts claim.

      b.  **Right to petition government**

Plaintiff's claim that the loss of his materials deprived him of his right to petition government appears to overlap his access-to-the-courts claim. As discussed, the right to access the courts arises from the First Amendment and the Due Process Clause. *Lewis*, 518 U.S. at 346; *Bounds*, 430 U.S. at 822. "[T]he right to petition the Government for redress of grievances . . . includes 'access of prisoners to the courts for the purpose of presenting their complaints.'" *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (quoting *Johnson v. Avery*, 393 U.S. 483, 485 (1969)). This Court has already concluded that Plaintiff's right to access the courts was not impaired by any action taken by Defendants. Plaintiff fails to identify any other aspect of his right to petition government that has been implicated by Defendants' conduct. As a consequence, Plaintiff fails to

16

state an independent claim based on the right to petition government protected by the First Amendment.

V.     **Pending Motion**

Plaintiff has filed a motion requesting a hearing, an order of contempt, and preliminary injunctive relief against non-Defendant Acting LMF Warden Sarah Schroeder, mandating that she prevent Defendants from impeding or impairing his access to the courts to pursue the instant action. Because the Court concludes that all of Plaintiff's claims must be dismissed, his request for preliminary relief is moot. Moreover, no basis exists for finding Acting Warden Schroeder in contempt, as she has not violated any order of this Court. For both reasons, Plaintiff's pending motion will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: January 4, 2021 /s/ Janet T. Neff
Janet T. Neff
United States District Judge